STATE of Wisconsin, Plaintiff-Respondent,

v.

Scott FOLEY, Defendant-Appellant.

Court of Appeals

*No. 87–0510–CR. Submitted on briefs October 6, 1987.—*
*Decided November 25, 1987.*

(Also reported in 417 N.W.2d 920.)

For the defendant-appellant the cause was submitted on the briefs of *John C. Albert* and *Smoler & Albert, S.C.,* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Paul Lundsten,* assistant attorney general.

Before Gartzke, P.J., Eich and Sundby, JJ.

SUNDBY, J.   Scott Foley appeals an order under sec. 973.09(1)(b), Stats., requiring him to make restitution as a condition of probation upon conviction of two counts of theft by contractor, contrary to sec. 779.02(5) and 943.20(1)(b), Stats. Section 973.09(1)(b) provides:

> If the court places the person on probation, the court shall require restitution designed to compensate the victim's pecuniary loss resulting from the

crime to the extent possible, unless the court finds there is substantial reason not to order restitution as a condition of probation. ...

The trial court entered an order requiring Foley to make restitution to the owners who had advanced him moneys on two home improvement contracts and to persons who had provided Foley with labor and materials on the contracts.

The issues are: (1) Does the restitution order violate the supremacy clause, art. VI, cl. 2, of the federal constitution because it includes debts discharged in bankruptcy? (2) Was the discharge in bankruptcy of Foley's debts to persons who provided labor and materials a substantial reason under sec. 973.09(1)(b), Stats., to not order restitution as a condition of probation? (3) Did the trial court deny Foley his right to trial by a jury when it required restitution in an amount exceeding the misappropriations determined by the jury? (4) Did the trial court deny Foley his right to trial by a jury when it included as victims to whom Foley must make restitution, persons not named in the charging documents? (5) Does sec. 973.09(1)(b) permit the sentencing court to require restitution to persons not named in the charging documents? (6) Did the trial court err when it determined the amount and method of payment of restitution without considering Foley's financial resources and future ability to pay?

Because we conclude that the trial court failed to consider Foley's financial resources and future ability to pay, as required by sec. 973.09(1m)(a), Stats., when it determined the amount and method of payment of the restitution it ordered, we reverse the restitution order and remand and direct that the trial court

reconsider the order, taking these factors into consideration. We resolve the remaining issues against Foley.

## I.

## BACKGROUND OF THE CASE

Foley was employed as contractor by two home owners, the Straubs and the Andersons, to make improvements to their homes. They advanced funds to Foley, who employed suppliers, subcontractors and laborers on each contract. He was not able to complete the contracts. His debts to the persons who provided labor and materials on both projects were discharged in bankruptcy. He was subsequently found guilty by a jury of misappropriating the amounts advanced him by the Straubs and the Andersons. After a hearing held over several separate dates, the trial court entered an order that Foley make restitution to the owners and the laborers, suppliers and materialmen on both contracts.

## II.

## DISCHARGE IN BANKRUPTCY

The jury found that Foley misappropriated $13,830.57 on the Straub contract, and $4,347.49 on the Anderson contract. Foley acknowledges that these misappropriations were not discharged in his bankruptcy proceedings because "[t]he bankruptcy policies do not include allowing individuals who intentionally commit criminal acts to be forgiven." He contends, however, that the pecuniary losses to suppliers, subcontractors and laborers are "debts" which were

335

discharged in his bankruptcy. Foley notes that none of these creditors objected to his discharge. He argues that the restitution order, insofar as it requires him to repay discharged debts, attempts to supersede the federal bankruptcy laws and violates the supremacy clause, art. VI, cl. 2, United States Constitution.[1]

Foley's argument requires that we construe sec. 973.09, Stats., and the federal bankruptcy laws in relation to each other and in relation to the facts. Such construction presents questions of law which we determine without deference to the trial court. *State v. Vonesh,* 135 Wis. 2d 477, 480, 401 N.W.2d 170, 172 (Ct. App. 1986).

██

We conclude that because "federal bankruptcy courts should not invalidate the results of state criminal proceedings," *Kelly v. Robinson,* 479 U.S. —, 93 L. Ed. 2d 216, 227 (1986), restitution ordered under sec. 973.09, Stats., is unaffected by bankruptcy proceedings.

Foley argues that *Kelly v. Robinson* does not apply because, unlike the debts involved in that case, Foley's debts were already discharged when the restitution order was entered.[2] We agree that the proba-

---

[1]Foley's argument presents an issue of first impression. In *State v. Wolter,* 85 Wis. 2d 353, 373–74, 270 N.W.2d 230, 240–41 (Ct. App. 1978), the issue was raised but not reached by our court.

[2]This argument and Foley's argument that sec. 973.09(1m)(a), Stats., permits him to assert his discharge as a defense to claims based on discharged debts assume that a restitution order depends on an underlying debt. These arguments have been rejected by the courts. *See United States v. Roberts,* 783 F.2d 767, 771 (9th Cir. 1985) (restitution as a critical element of defendant's rehabilitative process not affected by discharge because bankruptcy proceedings are not generally concerned with criminality); *United States*

tioner's claim in *Kelly v. Robinson* was made in a factual context different from this case. We do not agree, however, that the principles of that decision have no application to this case.

In *Kelly v. Robinson,* 479 U.S. at —, 93 L. Ed. 2d at 227, the Court noted that the current bankruptcy code was enacted against the background of an established judicial exception to discharge for criminal sentences under the Bankruptcy Act of 1898. The reasoning behind the judicial exception was:

> A discharge in bankruptcy has no effect what-
> soever upon a condition of restitution of a criminal

---

*v. Alexander,* 743 F.2d 472, 480 (7th Cir. 1984) (no congressional intent in the bankruptcy code to prevent sentencing judges from imposing restitution with a rehabilitative effect); *United States v. Carson,* 669 F.2d 216, 217 (5th Cir. 1982) (discharge extinquished defendant's liability to victim on any claim to payment but did not extinguish the victim's "loss" for which restitution is authorized); *Barnette v. Evans,* 673 F.2d 1250, 1251 (11th Cir. 1982) (adopting *Carson* precedent); *State v. Muzio,* 732 P.2d 879, 882 (N.M. Ct. App. 1987) (discharge does not void restitution subsequently imposed under a state criminal judgment, citing *Kelly v. Robinson*); *State v. Eyre,* 692 P.2d 853, 855 (Wash. Ct. App. 1984) ("Since ... restitution ... constitutes punishment and rehabilitation rather than forced payment of a discharged debt, the bankruptcy does not affect the punishment imposed."); *People v. Milne,* 690 P.2d 829, 837 (Colo. 1984) (bankruptcy laws are not intended to relieve a defendant from legal consequences of a criminal conviction); *State v. Angle,* 353 N.W.2d 421, 424 (Iowa 1984) (discharge of a claim is not a circumstance limiting victim restitution). *See also Miller v. State,* 502 N.E.2d 92, 95 (Ind. 1986), and cases cited therein, ("The fact that a criminal defendant's personal liability has been discharged in bankruptcy does not preclude an order of restitution as a component of a criminal sentence."). We do not suggest that a debt to which the probationer has a valid defense, other than discharge in bankruptcy, may be included in a restitution order.

> sentence. A bankruptcy proceeding is civil in nature and is intended to relieve an honest and unfortunate debtor of his debts and to permit him to begin his financial life anew. A condition of restitution in a sentence of probation is a part of the judgment of conviction. It does not create a debt nor a debtor-creditor relationship between the persons making and receiving restitution. As with any other condition of a probationary sentence it is intended as a means to insure the defendant will lead a law-abiding life thereafter.

*Id.* at —, 93 L. Ed. 2d at 226, quoting *State v. Mosesson,* 356 N.Y.S.2d 483, 484 (1974) (citations omitted).

In *Kelly v. Robinson,* the court found an "absence of any significant evidence that Congress intended to change the law in this area," *Id.,* 479 U.S. at —, 93 L. Ed. 2d at 231, and concluded that therefore federal bankruptcy courts should not impede the state's right to formulate and enforce penal sanctions. *Id.,* 479 U.S. at —, 93 L. Ed. 2d at 227.[3]

Foley argues that his situation is different because ordering restitution of debts which have been discharged frustrates the bankruptcy code's purpose to give the debtor a "fresh start." We disagree. In a criminal justice system which focuses upon the offender and not the victim, ordering the offender to make restitution to his victim has a rehabilitative effect which is not incompatible with a "fresh-start" approach. It is doubtful, however, that the Supreme Court in *Kelly v. Robinson* would have reached the result it did if Connecticut's criminal justice system

---

[3]"The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States. This Court has emphasized repeatedly 'the fundamental policy against federal interference with state criminal prosecutions.'" *Kelly v. Robinson,* 479 U.S. at —, 93 L. Ed. 2d at 227.

had focused on compensation to the victim rather than rehabilitation of the offender. The Court emphasized that the Connecticut statute focuses "upon the offender and not on the victim, and ... restitution is part of the criminal penalty rather than compensation for a victim's actual loss." *Kelly v Robinson,* 479 U.S. at —, 93 L. Ed. 2d at 223, quoting *In re Pellegrino,* 42 B.R. 129, 137 (Bankr. D. Conn. 1984).

We consider therefore the focus of sec. 973.09, Stats. In *Huggett v. State,* 83 Wis. 2d 790, 798–99, 266 N.W.2d 403, 407 (1978), the court discussed restitution as a condition of probation as follows:

> Restitution can aid an offender's rehabilitation by strengthening the individual's sense of responsibility. The probationer may learn to consider more carefully the consequences of his or her actions. One who successfully makes restitution should have a positive sense of having earned a fresh start and will have tangible evidence of his or her capacity to alter old behavior patterns and lead a law-abiding life. Conditioning probation on making restitution also protects the community's interest in having the victims of crime made whole. However, conditioning probation on the satisfaction of requirements which are beyond the probationer's control undermines the probationer's sense of responsibility.

*See also Kelly v. Robinson,* 479 U.S. at —, n. 10, 93 L. Ed. 2d at 228 (restitution is an effective rehabilitative penalty and has a more precise deterrent effect than a traditional fine).

When *Huggett* was decided, sec. 973.09(1), Stats. (1977), empowered the trial court to impose any reasonable and appropriate condition on the grant of

probation. Restitution was such a condition. *Id.,* 83 Wis. 2d at 796, 266 N.W.2d at 406.

Section 973.09, Stats., has been extensively amended since *Huggett.* Restitution is now a mandatory condition of probation "to compensate the victim's pecuniary loss ... to the extent possible, unless the court finds there is substantial reason not to order restitution as a condition of probation." Sec. 973.09(1)(b). If the court does not require restitution, it must state its reasons on the record. *Id.*

Unquestionably, requiring restitution to the victim as a condition of probation reflects the legislature's increasing concern for the rights of victims but the requirement does not shift the focus from the state's interests in rehabilitation and punishment to the victim's interest in compensation. The legislative decision to require restitution is not inconsistent with the penal goals of the state, which are dual: rehabilitation of the offender and protection of the state and community interest. *State v. Jackson,* 128 Wis. 2d 356, 362, 382 N.W.2d 429, 432 (1986), quoting *Huggett,* 83 Wis. 2d at 798, 266 N.W.2d at 407.

Section 973.09, Stats., reflects the state's interest in rehabilitation of the offender: restitution shall be ordered only to the extent possible; in determining the amount and method of payment, the court shall consider the financial resources and future ability of the probationer to pay; restitution is limited to the victim's actual loss; and the restitution order may not extend beyond the maximum term of probation that could have been imposed. *See State v. Garner,* 54 Wis. 2d 100, 105, n. 4, 194 N.W.2d 649, 651 (1972) (suggesting conditions of probation and restitution which are reasonable and related to rehabilitation).

■ Requiring restitution to the extent possible as a condition of probation does not unduly weight the scales in favor of the victim. The victim has no control over the amount of restitution or over the decision to order probation and restitution. *Kelly v. Robinson,* 479 U.S. at —, 93 L. Ed. 2d at 230. *See also State v. Eyre,* 692 P.2d 853, 854 (Wash. Ct. App. 1984) ("Criminal restitution does not create in the victim a right to payment."). The state's criminal justice system has not become a victims' collection agency. *See State v. Scherr,* 9 Wis. 2d 418, 424, 101 N.W.2d 77, 80 (1960) ("the criminal process [should not] be used to supplement a civil suit or as a threat to coerce the payment of a civil liability and thus reduce the criminal court to a collection agency."); *State v. Davis,* 127 Wis. 2d 486, 497–98, 381 N.W.2d 333, 338–39 (1986) (court reversed an order extending probation for sole purpose of collecting a debt).

■ We conclude that sec. 973.09, Stats., does not impermissibly focus on compensation to the victim. Therefore, the holding of *Kelly v. Robinson,* 470 U.S. at —, 93 L. Ed. 2d at 227, applies: federal bankruptcy courts should not invalidate the results of state criminal proceedings.[4] The trial court correctly con-

---

[4]The restitution order may be subject to 11 U.S.C. sec. 523(a)(7) (1982) which protects from discharge any debt, "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." Restitution orders are within the meaning of 11 U.S.C. sec. 523(a)(7). *Kelly v. Robinson,* 479 U.S. at —, 93 L. Ed. 2d at 231. We prefer, however, to rest our decision on the broader principles of *Kelly v. Robinson* because it is not clear that

cluded that it could require, as a condition of Foley's probation, that he make restitution to the victims of his crime even though his civil liability to them had been discharged in bankruptcy. Because the federal bankruptcy courts defer to the sovereignty of the state in criminal prosecutions, the restitution order does not violate the supremacy clause of the federal constitution.

Foley argues that in any event the discharge of the debts included in the restitution order is a "substantial reason not to order restitution as a condition of probation." Section 973.09(1)(b), Stats. However, he fails to develop this argument.

## III.

## DENIAL OF TRIAL BY JURY

Foley claims that the trial court denied him his right to a trial by jury when it determined "damages" in excess of those determined by the jury. Foley's argument assumes that the trial court could not (without invading the province of the jury) determine restitution in an amount exceeding his misappropriations as found by the jury. Foley confuses his trial for the criminal offenses with the sentencing process.

Probation is part of the sentencing process. More precisely, probation is not a sentence but an alternative to sentencing. *Garski v. State,* 75 Wis. 2d 62, 69, 248 N.W.2d 425, 429 (1977). The criminal trial is over. There is no constitutional right in a convicted defendant to have a jury determine the restitution required

11 U.S.C. sec. 523(a)(7) protects from discharge an order which requires restitution of debts already discharged.

as a condition of probation. The determination of that amount is in the discretion of the trial court, subject to sec. 973.09(1m)(a), Stats. Foley's right to trial by jury was satisfied when he was tried before a jury and the elements of the offense of theft by contractor were proved beyond a reasonable doubt on each count.

Foley also claims that he is being sentenced for charges that have not yet been made, but could be made in the future, because restitution was ordered to persons not named in the charging documents. Foley does not identify the additional offenses he has been convicted of nor the offenses he might be charged with in the future. We decline to develop his argument for him. *State v. Gulrud*, 140 Wis. 2d 721, 730, 412 N.W.2d 139, 142 (Ct. App. 1987).

## IV.

## THE VICTIMS

Foley argues that "victim," within the meaning of sec. 973.09(1)(b), Stats., is limited to those named in the charging documents. We disagree.

██

Section 973.09(1)(b), Stats., provides: "If the court places the person on probation, the court shall require restitution designed to compensate the victim's pecuniary loss *resulting from the crime* to the extent possible ...." (Emphasis added.) Under sec. 779.02(5), Stats.,[5] the person paying moneys to a prime contrac-

---

[5]Section 779.02(5), Stats., provides:

> The proceeds of any mortgage on land paid to any prime contractor or any subcontractor for improvements upon the mortgaged premises, and all moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a

tor for improvements may suffer pecuniary loss if the contractor misappropriates the funds entrusted to him and fails to perform his contract. Suppliers, subcontractors and laborers may be equally victimized if the contractor converts to his own use, contrary to sec. 943.20(1)(b), Stats.,[6] the trust fund created for their benefit without paying for their services or supplies. We conclude that the trial court correctly held that the victims of Foley's crime were not only

trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor and materials used for the improvements, until all the claims have been paid, and shall not be a trust fund in the hands of any other person. The use of any such moneys by any prime contractor or subcontractor for any other purpose until all claims, except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20. . . .

[6]Section 943.20(1), Stats., provides:

Whoever does any of the following may be penalized as provided in sub. (3):

. . . .

(b) By virtue of his office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his authority, and with intent to convert to his own use or to the use of any other person except the owner. A refusal to deliver any money or a negotiable security, instrument, paper or other negotiable writing, which is in his possession or custody by virtue of his office, business or employment, or as trustee or bailee, upon demand of the person entitled to receive it, or as required by law, is prima facie evidence of an intent to convert to his own use within the meaning of this paragraph.

the owners but the laborers, subcontractors and materialmen.[7]

## V.

## FINANCIAL RESOURCES AND FUTURE ABILITY TO PAY

Section 973.09(1m)(a), Stats., provides: "In determining the amount and method of payment of restitution, the court shall consider the financial resources and future ability of the probationer to pay." Requiring the trial court to consider the probationer's financial resources and future ability to pay furthers the objectives of probation because it ensures that requirements are not imposed which are beyond the probationer's control. Imposing unrealistic requirements may undermine the probationer's sense of responsibility. *Huggett,* 83 Wis. 2d at 799, 266 N.W.2d at 407.

█
At Foley's request, the trial court held an evidentiary hearing to determine who were the victims of his crime and the amount of restitution to be ordered to compensate them for their pecuniary loss. The trial court made no findings as to Foley's financial resources and future ability to pay the restitution it ordered. The trial court may have considered these

---

[7]Foley argues for the first time in his reply brief that he will be forced to pay double restitution if amounts paid to laborers, subcontractors and materialmen are not offset against the amounts owed to the homeowners. As a general rule we will not consider issues raised by appellants for the first time in a reply brief. *Waukesha Concrete v. Capitol Indemnity,* 127 Wis. 2d 332, 340 n.2, 379 N.W.2d 333, 336 (Ct. App. 1985). There is no reason to depart from that rule in this case.

factors but it made no record of its consideration that we can review. When a statute requires that a trial court consider stated factors in reaching a decision, the court acts in excess of its discretion if it fails to state why and how it made its decision. *See Schmid v. Olsen,* 111 Wis. 2d 228, 237, 330 N.W.2d 547, 551–52 (1983) (trial court's failure to articulate statutory criteria as basis for its decision constituted an abuse of discretion).

The state relies on the reasons stated by the trial court in sentencing Foley.[8] We conclude that those reasons do not satisfy the requirement of sec. 973.09(1m)(a), Stats., because the trial court had not yet determined how much pecuniary loss was involved. It could not have addressed the question of whether Foley had financial resources and future ability to pay the restitution which it ultimately ordered.

The failure of the trial court to consider Foley's financial resources or future ability to pay requires reversal and remand unless the record demonstrates that the amount of restitution is sustainable as a

---

[8]The trial court stated:

In considering what your sentence should be . . . I have considered the fact that you are 24 years of age, I have considered that you are in good health and able to work as a carpenter or a contractor, I should say, and as a builder. I have taken into consideration that you have no mental health problems of any kind. And that you have had the advantage of a high school education at Beloit Memorial High School, having graduated in 1979. I have taken into account that you do have the ability apparently to be a builder and to do construction work in a proper manner. As a matter of fact, the architect testified today that he considers your work to be quite excellent.

proper discretionary choice. *State v. Pope,* 107 Wis. 2d 726, 732, 321 N.W.2d 359, 362 (Ct. App. 1982). There is evidence from the sentencing hearing, especially the testimony of the architect who then employed Foley, which supports a fairly high level of restitution. Foley presented a restitution plan, but his plan, and his offer to make restitution at the level of $160.00 a month, assumed that the court would require restitution only to the Straubs and the Andersons in the amounts determined by the jury. Yet there is no evidence of Foley's financial resources or ability to pay on which we could sustain the trial court's decision. The record does not demonstrate that Foley has present financial resources or future ability to pay, sufficient to make restitution in the amount and according to the method of payment ordered by the trial court. On remand the trial court shall consider these factors and make appropriate findings.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.